HOLLIS JACOBS v. MARTHA E. MILLER ET AL.

[See 45 Mich. 513 and 46 Mich. 587].

*Deed to man and wife does not convey an estate in common—Construction of terms of a deed.*

A deed to a man and his wife, "their heirs and assigns," conveys an estate that is neither a tenancy in common nor a joint tenancy, but one under which both parties are seized of the entirety and the survivor takes the whole. During their joint lives neither can so alien the property as to bind the other, nor does the husband's attainder affect the wife's right. Nor is the estate affected by the statute of partition.

Whether a conveyance to a *bona fide* purchaser would not be good when received from the survivor of two persons who, in the deed to themselves, had been named and described as husband and wife, and who had been publicly married and lived in that relation, and had accepted the deed in that character—*Q.*

The estate conveyed by a deed describing the grantees as husband and wife cannot, under the statute of frauds, be shown by oral evidence to be an estate in common.

The terms of a deed must be given their legal effect, which the parties

or their privies cannot contradict by parol evidence in any collateral matter ; this applies to the grantee's name, which is part of the deed, and to the interest conveyed, which, in a deed to several persons, is the same to each if not otherwise designated.

One who claims under a deed confirms all its provisions and cannot establish his claim by adopting those provisions, only, which are in his favor, while he repudiates or contradicts others that are repugnant thereto.

A divorced woman who had children, married a man who, as it afterward appeared, had another wife living from whom he was not divorced.   They lived together as man and wife and were so regarded by the public.   Property belonging to an infant was sold to them under an order of the Court of Chancery which named the man and recited that he and "his wife" had offered a certain sum for the property and farther directed that the infant's guardian execute a conveyance to him and "his wife." A deed was executed accordingly in which the grantees were named and the woman's name followed by the words "his wife." The woman died and the man conveyed away the entire property.  *Held* that the woman's children by her first husband could not contradict the legal operation of the guardian's deed, by parol evidence that their mother was not the lawful wife of her second husband and that the deed therefore conveyed an estate in common in which they had a right of inheritance. Whether such a showing would not also be excluded by the operation of the chancery order as a judicial act—*Q.*

Error to the Superior Court of Detroit.   (Chipman, J.) Jan. 10.—Feb. 27.

EJECTMENT.   Defendants appeal.   Reversed.

*Levi T. Griffin* (*Griffin, Dickinson, Thurber & Hosmer*) for appellants, cited to the point that where a grant is accepted by the grantees as husband and wife, they are estopped from denying that relation as against all subsequent purchasers in good faith : *Duchess of Kingston's Case* 2 Smith's Lead. Cas. 609 ; *Comstock v. Smith* 26 Mich. 306 ; *Damouth v. Klock* 29 Mich. 289 ; *Ross v. Durham* 4 Dev. & Bat. (N. C. L.) 54 ; *Chautauque County Bank v. Risley* 4 Den. 480 ; *Bank of U. S. v. Benning* 4 Cr. C. C. 81 ; *Byrne v. Morehouse* 22 Ill. 603 ; *Scott v. Douglas* 6 Ohio 362 ; *Fitch v. Baldwin* 17 Johns. 161 ; *Torrey v. Bank of Orleans* 9 Paige 648 ; *Sinclair v. Jackson* 8 Cow.

587; *Demeyer v. Legg* 18 Barb. 20 ; *Rosseel v. Wickham* 36 Barb. 386 ; *Colden v. Cornell* 3 Johns. Cas. 506; *Inskeep v. Shields* 4 Harr. 345 ; *Carver v. Jackson* 4 Pet. 82; *Crane v. Morris* 6 Pet. 598 ; *Carpenter v. Buller* 8 M. & W. 209 ; *South Eastern Railway v. Warton* 6 H. & N. 520; *Duncan v. Stewart* 25 Ala. 408; *Hayes v. Livingston* 34 Mich. 396; *Doane v. Walker* 101 Ill. 628 : 15 Rep. 10.

*Chas. M. Swift* and *Otto Kirchner* for appellee.   A deed poll can never operate by way of estoppel by and against the grantee, for the reason that his seal is not to it (Co. Lit. 47 b., 363 b.); nor as an estoppel against the grantor, since an estoppel of this sort must be mutual and reciprocal : *Gardner v. Greene* 5 R. I. 109 ; *Great Falls Co. v. Worster* 15 N. H. 450; *Winlock v. Hardy* 4 Litt. 272 ; 3 Wash. R. P. 92; Bigelow on Estoppel 289; but see *Atlantic Dock Co. v. Leavitt* 54 N. Y. 35 ; a grantee is not estopped from denying a grantor's title, where the grant is in fee : 3 Wash. R. P. 92 ; acceptance of a deed by a vendee does not estop the vendor : id ; a grantee is not, by acceptance of a deed, estopped to deny the grantor's title : *Averill v. Wilson* 4 Barb. 180; *Small v. Procter* 15 Mass. 499 ; *Gaunt v. Wainman* 3 Bing. N. C. 69 ; *Osterhout v. Shoemaker* 3 Hill 513 ; *Gardnee v. Sharp* 4 Wash. C. C. 609; estoppels occur only in cases of covenants running with the land : *Boyd v. Longworth* 11 Ohio 235 ; a deed is not conclusive evidence of the existence of facts recited therein dehors the contract of transfer : *Rhine v. Ellen* 36 Cal. 362; a recital in a deed founded in mistake and untrue, will not be allowed to operate by way of estoppel to exclude the truth satisfactorily shown to the court : *Stoughton v. Lynch* 2 Johns. Ch. 209 ; to give a recital the effect of an estoppel it must appear that the object of the parties was to make the matter of the recital a fixed fact as the basis of their action : *Hays v. Askew* 5 Jones (N. C. L.) 63 ; neither party to a deed of bargain and sale are estopped to show that one of the bargainors was a feme-sole, although it recites that she was covert : *Brinegar v. Chaffin* 3 Dev. (N. C. L.) 108 ; *Spicer v.*

*Spicer* 16 Abb. Pr. (N. S.) 112 ; no person is estopped in pais by any admission made in ignorance of his rights or where it is induced by an innocent mistake of facts ; *Thrall v. Lathrop* 30 Vt. 307 ; *Mills v. Graves* 38 Ill. 455 ; *Clark v. Coolidge* 8 Kan. 189 ; *Liverpool Wharf v. Prescott* 7 Allen 494 ; *Reed v. McCourt* 41 N. Y. 435 ; and the party to whom the representation was made must have been ignorant of the truth : *Boggs v. Mining Co.* 14 Cal. 279 ; *Woods v. Wilson* 37 Penn. St. 384 ; *Hambleton v. Cen. R. R. Co.* 44 Md. 551 ; only parties and privies can take advantage of an estoppel : *Massure v. Noble* 11 Ill. 531 ; *Murray v. Sells* 53 Ga. 257 ; *Sunderlin v. Struthers* 47 Penn. St. 411 ; *Glidden v. Town of Unity* 30 N. H. 104; *Simpson v. Pearson* 31 Ind. 1 ; and only those who are also bound by it : *Lansing v. Montgomery* 2 Johns. 382; *Miles v. Miles* 8 W. & S. 135 ; for the application of the doctrine of estoppel in pais there must generally be some intended deception in the conduct or declaration of the parties to be estopped, or such gross negligence as to amount to constructive fraud by which another has been misled to his injury : *Brant v. Virginia Coal Co.* 93 U. S. 326 ; the element of fraud is essential either in the intention of the party estopped, or in the effect of the evidence which he attempts to set up : *Hill v. Epley* 31 Penn. St. 334 ; *Zuchtmann v. Roberts* 109 Mass. 53 ; *Henshaw v. Bissell* 18 Wall. 255, 271 ; *Dorlarque v. Cress* 71 Ill. 380 ; *Chandler v. White* 84 Ill. 435 ; a party is not estopped by his acts or declarations from showing the truth unless such acts or declarations were intended to influence the conduct of another, or he had reason to believe they would have that effect : *Kuhl v. Mayor of Jersey City* 23 N. J. Eq. 84; *Piper v. Gilmore* 49 Me. 149 ; *Turner v. Coffin* 12 Allen 401 ; *Wilcox v. Howell* 44 N. Y. 398 ; in Michigan an estoppel in pais is not available as a defense at law : *Hayes v. Livingston* 34 Mich. 384 ; *Ryder v. Flanders* 30 Mich. 336 ; *Shaw v. Chambers* 48 Mich. 355 ; *Nims v. Sherman* 43 Mich 52.

GRAVES, C. J.   This is an action of ejectment, in which

the trial judge ordered a verdict for the plaintiff. Mr. Jacobs is the transferee of George Hack, Peter Hack, and Mary Tibbitts, and no rights will suffer prejudice if they are considered as the real plaintiffs. In respect to the merits his position is identical with theirs. They are the children and heirs at law of Margaret Hack, otherwise Margaret Taufkirch, and the estate sought to be recovered is claimed to have come to them by direct inheritance from her. The grounds of this claim will appear as we proceed. Their mother, the said Margaret, was divorced from their father, Jacob Hack, about the year 1859, and on the 26th of September, 1861, a marriage in due form was publicly solemnized between her and one Leo E. Taufkirch, and thenceforth they lived together as husband and wife until the time or about the time of her decease, which occurred in March, 1870. And to the public their relation appeared to be due to the marriage, and to be a lawful one and not meretricious.

During this interval and in 1864 proceedings were taken in the court of chancery in behalf of George W. Enders and others who were infant owners of the property in question, for the sale of said property, and the court granted an order, which, after reciting "that one Leo E. Taufkirch and his *wife* offered for the property the sum of $4500 in cash and that the court found from the evidence that said sum was the full value and that it was for the interest of the minors that the property should be sold" proceeded to order and direct the guardian " to execute a conveyance of said property as such guardian in the usual form to said Leo E. Taufkirch *and his wife*, and to deliver the same on receiving the sum of $4500 from said Taufkirch and wife, and to hold said sum subject to the order of the court." The guardian, for the purpose of carrying out his trust and complying with the exigency of the order in chancery, immediately executed a deed of the property to "Leo E. Taufkirch and Margaret Taufkirch, his wife, their heirs and assigns, " and made due delivery to the grantees. The proceedings were regularly reported and according to the

course and practice of the court were duly confirmed and have never been impaired. The grant was actually accepted by the respective grantees.

Subsequent to the death of the said Margaret and on the 14th of June, 1870, the surviving grantee Taufkirch made his deed for the entire estate in fee-simple to the female defendant Martha E. Miller and the defendants hold under that deed. Hence both sides claim under the chancery deed before mentioned—the three children of Margaret as her heirs, and the defendants by grant from the survivor Leo.

It is expedient to mark here the peculiar nature of the estate which the chancery proceedings and the deed incorporated with them assumed to create. These proceedings prima facie made an estate which is fully recognized by our laws (*Fisher v. Provin* 25 Mich. 347; *Insurance Co. v. Resh* 40 Mich. 241; *Manwaring v. Powell* id. 371) but which differs widely from tenancy in common and joint tenancy. The grant ran to the parties of the second part as husband and wife, and it was intended to make an estate by which the property should be held by entirety. The ingredients and incidents of such a title or estate give it an exclusive character and distinguish it from all other modes of holding. The persons of the second part do not take by moieties, but are seized of the entirety and the survivor takes the whole; and during the joint lives neither can alien so as to bind the other. If the husband be attainted, his attainder does not affect the right of the wife, if she survives him, nor is an estate so held affected by the statute of partition. Such in outline is the common-law conception of this holding. 4 Kent's Com. 362. It would be idle to multiply authorities.

On the face of the muniments of title, therefore, and according to the terms and import of the judicial proceedings and of the deed belonging to them, the right of the defendants is undoubted. On the death of Margaret the entire title and estate remained in Taufkirch, the survivor, and he granted all he had to Mrs. Miller.

Upon what ground then can the children of the said Mar-

garet dispute the defendant's title and set up a right of their own as her heirs? Their position is that in truth the marriage between their mother and Taufkirch was illegal for the reason that he had a wife living in Canada at the time of said marriage and consequently that their mother was not in law the wife of Taufkirch and hence was not in a condition to take and in reality did not take in that character, but as tenant in common, whereby they stand entitled to one-half of the premises as her heirs. They voluntarily demand the judgment of the court to allow them to affirm and have the benefit of the chancery conveyance in so far as it undertakes to pass the whole property; and then to turn round and contradict it in so far as it purports to fix and manifest the nature and quality of the estate, and moreover, to permit them to reach this end by parol evidence showing that the relation between their mother and Taufkirch was a criminal relation.

It is not certain that the want of legality in their mother's marriage with Taufkirch would of itself, if admitted as a fact in the case, so operate against the rights of a bona fide purchaser from the survivor as to defeat such purchaser, and to transfer one-half of the property to the children. *Divoll v. Leadbetter* 4 Pick. 220. It is not to be taken as a point positively settled that the conveyance to the two by name and as husband and wife and their acceptance of it in that character would not be sufficient for the purpose of a bona fide purchaser from the survivor. Let it be supposed that persons publicly intermarry, and then carry themselves as man and wife and so appear to the public; that they receive a conveyance of real property, which runs to them as "husband and wife;" that one dies and the survivor deeds the whole property to one who buys in perfect good faith; that afterwards it is discovered that on account of some relationship between the grantees, which perhaps they never mistrusted, the marriage was invalid,—would there be room for argument, or would there not, that the relation de facto should maintain the grant and that the

want of legality should not affect it? On this question no opinion is intimated.

Recurring to the predications and requirements of the plaintiff's case it remains to see whether the law will allow a recovery in this ejectment through the means relied on.

First. The state of the action necessitates a showing by parol that Taufkirch and the woman Margaret were never seized with the estate manifested by the deed, but took one of a wholly different character. An estate in common must be made out and developed not only in opposition to the plain legal import of the deed, but on oral evidence. This is not consistent with the Statute of Frauds. Comp. L., § 4692; *Bullen v. Runnels* 2 N. H. 255.

Second. By the principles of the common law the legal effect due to the plain words of a deed cannot be contradicted by parties or privies in any collateral matter by parol evidence. The terms must stand and receive their just legal significance. 2 Whart. Ev. §§ 1050, 1054, and cases; *Jackson v. Foster* 12 Johns. 488; *Jackson v. Robert's ex'rs* 11 Wend. 422. The name of the grantee is part of the deed, (2 Rolle's Abr. 43,) and where a deed is made to several individuals without designating in what proportions they shall hold, they will take in equal proportions precisely as though it had been detailed at length in the deed (*Campau v. Campau* 44 Mich. 31; *Treadwell v. Bulkley* 4 Day 395) and no parol proof can be admitted to give the deed a different effect than such as the words in it legitimately import. *Treadwell v. Bulkley* supra; *Morse v. Shattuck* 4 N. H 229; *Gully v. Grubbs* 1 J. J. Marsh. 388, 389, 390; 1 Cowen & Hill's notes 217, 1428 et seq. 1442, 1444. The case before us is governed by the same principle.

Third. Among the rules which have become axiomatic is one that a party must be consistent and not contradictory in the positions which he takes. In the language of Lord Kenyon he must not "blow hot and cold" at the same time. And one of the most important applications of the rule is where a party endeavors to establish a right or title in himself under one provision or implication of a deed or other

instrument by ignoring or contradicting another provision or implication which is destructive or fatally repugnant. Now according to the reason of the rule, which applies as well to deeds as to wills, a person cannot claim under the instrument without confirming it. He must found his claim on the whole and cannot adopt that feature or operation which makes in his favor and at the same time repudiate or contradict another feature or operation which is counter or adverse to it. *Wright v. Rutter* 2 Ves. Jr. 673; *Moore v. Butler* 2 Sch. & L. 249, 266, 267; *Maynard v. Maynard* 4 Edw. Ch. 711, 715; *Morrison v. Bowman* 29 Cal. 337–347, 348; *Thompson v. Thompson* 19 Me. 235; *Crosby v. Chase* 17 Me. 369; *Smith v. Smith* 14 Gray 532; *Board v. Board* L. R. 9 Q. B. 48; *The Water Witch* 1 Black 494; *Cowell v. Springs Co.* 100 U. S. 55; *Scholey v. Rew* 23 Wall. 331; *Tuite v. Stevens* 98 Mass. 305; *Lee v. Lee* L. R. 4 Ch. Div. 175; *Codrington v. Lindsay* L. R. 8 Ch. App. 578; *Caulfield v. Sullivan* 85 N. Y. 153; *Swanson v. Tarkington* 7 Heisk. 612; *Emmons v. Milwaukee* 32 Wis. 434; *Sinclair v. Jackson* 8 Cow. 543; *Jackson v. Ireland* 3 Wend. 99; *Overbach v. Heermance* Hopk. 337; *Hart's Lessee v. Johnson* 6 Ohio (1st series) 87; *May v. Tillman* 1 Mich. 262; *Farmers & Mechanics' Bank v. Bronson* 14 Mich. 361; *Botsford v. Murphy* 47 Mich. 537. The case of the plaintiff is in direct contravention of this rule.

The obvious conclusion is that it was error for the court to permit the plaintiff to contradict the prima facie legal operation of the chancery deed under which both parties claim and to change the estate from that which the terms unequivocally mark out to another wholly different and not within the meaning of the words of the instrument.

The case suggests other matters, of which one is whether the respective orders in chancery would as judicial doings be entitled to operate with any conclusive force to exclude the showing which the plaintiff was allowed to make. But the consideration of this and all other questions not particularly noticed is intentionally waived.

The judgment must be reversed with costs and a new trial granted.

COOLEY and MARSTON, JJ. concurred.